UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 11-15521-MER |
| EPIC ENERGY RESOURCES, INC. | ) | |
| EIN: 94-3363969 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| IN RE: | ) | |
| | ) | Case No. 11-15523-MER |
| EPIC INTEGRATED SERVICES, INC. | ) | |
| EIN: 84-1365735 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **Jointly Administered Under** |
| | ) | **Case No. 11-15521-MER** |

**NOTICE OF FILING OF FINAL ORDER (I) AUTHORIZING
SECURED AND SUPER PRIORITY FINANCING AND USE OF CASH
COLLATERAL PURSUANT TO SECTIONS 361, 363, 364 AND 507(B),
(II) MODIFYING AUTOMATI C STAY UNDER SECTION 362, AND (III)
GRANTING OTHER RELATED RELIEF**

The Debtors, by and through their attorneys, Kutner Miller Brinen, P.C., herewith files its Final Order (I) Authorizing Secured and Super Priority Financing and Use of Cash Collateral Pursuant to Sections 361, 363, 364 and 507(B), (II) Modifying Automatic Stay under Section 362, and (III) Granting other Related Relief, a copy of which is attached hereto as Exhibit A.

Dated: May 3, 2011.                    Respectfully submitted,

By: _____
     Lee M. Kutner, #I0966
     Kathryn G. Foley, #41543

**KUTNER MILLER BRINEN, P.C.**
303 E. 17th Avenue
Suite 500
Denver, CO  80203
Telephone:  (303) 832-2400
Telecopy: (303) 832-1510
E-Mail: lmk@kutnerlaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 11-15521 MER |
| EPIC ENERGY RESOURCES, INC. | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 11-15523 MER |
| EPIC ENERGY RESOURCES, INC. | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | **Jointly Administered in** |
| | ) | **Case No. 11-15521 MER** |

## FINAL ORDER (I) AUTHORIZING SECURED AND SUPER-PRIORITY FINANCING AND USE OF CASH COLLATERAL PURSUANT TO SECTIONS 361, 363, 364 AND 507(B), (II) MODIFYING AUTOMATIC STAY UNDER SECTION 362, AND (III) GRANTING OTHER RELATED RELIEF

This matter is before the Court pursuant to a motion dated March 21, 2011 (the "Motion"), filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"). The Motion requests an Order, pursuant to §§ 363, 364 and 507(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001(b), (c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors, *inter alia*, to obtain postpetition financing (the "Post-Petition Financing") pursuant to the terms and provisions of the Debtor-in-Possession Loan Agreement (the "New Loan Agreement" and, together with all notes, security agreements and all ancillary or related instruments, agreements or other documents at any time executed in connection therewith, the "New Loan Documents" and each individually, a "New Loan Document") between the Debtors and the holders of Epic Energy Resources, Inc.'s 10% Secured Debentures due December 5, 2012, and issued on

December 5, 2007, in the original aggregate amount of $20,250,00 (singularly, a "Debenture Holder" and collectively, the "Lender")[1], including obtaining emergency interim approval of the the Post-Petition Financing to and including the date of the Final Hearing; and requesting that this Court schedule the Final Hearing and approve notice with respect thereto and further requesting that this Court, upon the Final Hearing, enter an order approving the Post-Petition Financing on a permanent basis.  The Court held an Interim Hearing on March 24, 2011 (the "Interim Hearing") and on March 28, 2011 entered that Interim Order (I) Authorizing Secured and Super-Priority Financing and Use of Cash Collateral Pursuant to Sections 361, 363, 365 and 507(b), (II) Modifying Automatic Stay under Section 363, (III) Granting Other Related Relief, and (IV) Scheduling a Final Hearing Pursuant to Rule 4001 (the "Interim Order").   This final Order is referred to as the "Final Order."

In connection with the Post-Petition Financing, the Debtors further request authorization to grant the Lender §§ 364(c) and (d) liens and security interests in all of the Collateral (as hereinafter defined) to secure the Debtors' obligations under the New Loan Documents, including, but not limited to, a continuing first priority lien and security interest encumbering the Collateral, subject only to Existing Liens (as defined below), and an allowed super-priority administrative expense claim for the entire amount of the Debtors' obligations under the New Loan Documents.

Notice of the entry of the Interim Order and notice of the scheduling of the Final Hearing having been given prior to the Final Hearing in accordance with the terms of the Interim Order, and, such notice being sufficient notice under the circumstances, a final hearing on the Motion

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the New Loan Agreement and in the Motion. In the case of any conflicting definitions, the definitions provided by the New Loan Agreement will control.

was held on May 4, 2011 (the "Final Hearing"); and upon all of the pleadings filed with the Court and all of the proceedings held before the Court and the evidence adduced at the Interim Hearing and the Final Hearing, and the Court having noted the appearances of all parties in interest in the record of the Court; and objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that the permanent relief requested by the Motion is in the best interests of the Debtors and their creditors, and is essential for the continued operations of the Debtors' businesses and it further appearing that Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(l) of the Bankruptcy Code; and after due deliberation and consideration and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS AND CONCLUDES THAT:

A.    On March 18, 2011 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to an order of this Court, these Chapter 11 cases (the "Bankruptcy Cases") have been consolidated for procedural purposes only and are being jointly administered.

B.    No official creditors' committee (the "Committee") has yet been appointed in the Bankruptcy Cases.

C.    This Court has jurisdiction over this proceeding and the parties in interest and properties and interests in properties affected hereby under §§ 157(b) and 1334 of Title 28 of the United States Code (the "Judiciary Code"). Consideration of the Motion constitutes a core proceeding under § 157(b)(2) of the Judiciary Code.

D.    Prior to the Petition Date, the Debtor Epic Energy Resources, Inc. ("Epic") entered into a Purchase Agreement whereby it agreed to sell up to an aggregate of $20,250,00 in

principal amount of debentures to those purchasers (each a "Debenture Holder" and collectively, the "Debenture Holders") who are signatories to the Purchase Agreement (the "Debenture Agreement"). In connection with the Debenture Agreement, Epic and all of its subsidiaries entered into a Security Agreement for the benefit of the Debenture Holders (the "Security Agreement"). The Security Agreement granted the Debenture Holders a first priority lien in all of the assets of Epic and its Subsidiaries, including the Debtor Epic Integrated Services, Inc., herein. The Security Agreement also provided for the appointment of Whitebox Convertible Arbitrage Partner, LP ("Whitebox" or "Agent") to act as the agent for the Debenture Holders. Subsequent to the execution of the Debenture Agreement, Epic executed a series of 10% Secured Debenture Promissory Notes evidencing the indebtedness owed to the Debenture Holders under the Debenture Agreement (the "Debenture Notes"). The indebtedness evidenced by the Debenture Notes and owed to the Debenture Holders pursuant to the terms thereof and of the Debenture Agreement may be referred to herein as the "Pre-Petition Indebtedness" and the Debenture Agreement, Security Agreement and Debenture Notes may be collectively referred to herein as the "Pre-Petition Loan Documents".

   E.  The collateral securing the Pre-Petition Indebtedness pursuant to the Pre-Petition Loan Documents is referred to as the "Pre-Petition Collateral." Substantially all of the Debtors' assets, including all of their patents, trademarks, copyrights, royalty payments, license fees, inventory, accounts, deposit accounts, general intangibles, equipment and stock of subsidiaries, constitute Pre-Petition Collateral. All of the Debtors' cash relating to the Pre-Petition Collateral, whether now in existence or generated after the Petition Date from Pre-Petition Collateral, constitutes proceeds of the Pre-Petition Collateral and, therefore, is cash collateral of the Lender within the meaning of § 363(a) of the Bankruptcy Code.

F. The Debtors' businesses require the availability of credit in order to finance the ordinary costs of their operations.  Without such credit, the Debtors will not be able to pay their employees, maintain business relationships with vendors and suppliers and purchase inventory and otherwise finance their other direct operating expenses.  The ability of the Debtors to pay employees, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' continued viability.  In addition, the Debtors' have a critical need for immediate financing.  Without the immediate availability of the Post-Petition Financing, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates would occur.  The preservation, maintenance, and enhancement of the going concern value of the Debtors are of the utmost importance to a successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code.

G. The Debtors are unable to obtain permanent financing from sources other than the Lender on terms more favorable than under the New Loan Documents.  The Debtors have been unable to obtain permanent unsecured credit solely under § 503(b)(1) of the Bankruptcy Code as an administrative expense.  New credit is unavailable to the Debtors without (a) granting to the Lender claims having super-priority over that of all administrative expenses of the kind specified in §§503(b), 507(b) and 546(c) of the Bankruptcy Code, (b) securing such loans and other obligations with senior liens on and security interests in all of the pre-petition and post-petition assets, properties and interest in property of the Debtors and replacement liens as provided herein and in the New Loan Agreement, and (c) granting adequate protection pursuant to § 361 of the Bankruptcy Code to the Lender.

H.     The Lender has indicated a willingness to consent and agree to provide financing to the Debtors pursuant to the New Loan Documents, subject to the terms and conditions thereof and to the entry of this Final Order.

I.      To the extent that any person or entities (if any) other than the Lender may claim validly perfected liens or security interests in the Collateral, those entities' interests are adequately protected under the terms of this Final Order.  Among other things, the Post-Petition Financing will enable the Debtors to continue operating their businesses, thereby preserving the value of the Collateral for any such other entities.

J.      The Court finds that, under the circumstances of the Interim Hearing, the Interim Order and the Final Hearing and the relief requested in the Motion, sufficient notice has been given pursuant to Bankruptcy Code §§ 102(1), 364(c) and 364(d), and Bankruptcy Rules 2002 and 4001(c) and L.B.R. 2081-1.

K.     The Post-Petition Financing has been negotiated in good faith and at arm's-length between the Debtors and the Lender and any credit extended and loans made to the Debtors pursuant to the Interim Order and/or the New Loan Documents will be deemed (and are found) to have been extended, issued, or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).  Consequently, the Lender is entitled to the protections of Bankruptcy Code § 364(e).

L.      The terms of the Post-Petition Financing are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and the lien, security interest, and administrative claim granted to the Lender in conjunction with the Post-Petition Financing are supported by reasonably equivalent value and fair consideration.

M.      This Court concludes that entry of this Final Order is in the best interests of the Debtors' estates and creditors because its implementation, among other things, will make available to the Debtors working capital which is necessary to sustain the operations of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

N.      Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

O.      Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.      The Motion is GRANTED, subject to the terms and conditions set forth in this Final Order.  All objections to the entry of this Final Order either have been resolved as stated on the record at the Final Hearing, or shall be and hereby are, overruled.  The Debtors shall be, and they hereby are, authorized, directed and empowered to execute and deliver the New Loan Documents and to perform their respective obligations thereunder in accordance with the terms of the New Loan Documents.  The New Loan Documents shall be, and they hereby are, approved by this Final Order and, by this reference, incorporated herein as part of this Final Order.

2.      The Debtors are each authorized, directed and obligated to comply with and perform all of the terms and conditions contained in the New Loan Documents, and the Debtors are each authorized and obligated to repay amounts owing, with interest and any other charges, to the Lender in accordance with and subject to the terms and conditions set forth in the New

Loan Documents and this Final Order. The Debtors are further authorized and obligated to pay all facility and other fees and expenses, including, but not limited to, all reasonable fees and expenses of professionals engaged by the Lender (including the out-of-pocket expenses, reasonable fees, and disbursements of counsel to the Lender) in accordance with the terms of the New Loan Documents. The professional fees and expenses incurred by the Lender are not subject to the provisions of Bankruptcy Code §§ 327, 328, 329, 330 or 331, and will be paid pursuant to the New Loan Documents without the necessity of further order of this Court. All loans made under the Interim Order, Final Order and/or New Loan Agreement (the "DIP Loans") and interest thereon, and all fees, costs, expenses, indebtedness, obligations and liabilities of the Debtors to the Lender under or in respect of the New Loan Documents, the Interim Order and this Final Order are referred to herein as the ''New Obligations.'' The New Obligations are the joint and several liability of all of the Debtors and shall be the liability and obligation of each of the Debtors.

3.    The Debtors are expressly authorized to borrow on a revolving basis, from the Lender, on the terms and subject to the conditions and limitations on availability set forth in the New Loan Documents, up to $750,000.00 in aggregate principal amount under the First Tranche and Second Tranche of the DIP Loans at any one time outstanding.

4.    In accordance with Bankruptcy Code §§ 364(c)(1) and 507(b), and separate and independent from the security for the New Obligations granted to the Lender, the New Obligations also shall be an administrative claim (the "Super-Priority Claim") with priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b) and 546(c), and the Super-Priority Claim

granted to the Lender shall be senior to the rights of the Debtors, and any successor trustee or any other creditor or estate representative in the Bankruptcy Cases or any subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceedings in the event of any conversion of any of the Debtors' Bankruptcy Cases to a case or cases under Chapter 7 of the Bankruptcy Code.  No cost or expense of administration, under Bankruptcy Code §§ 105, 364(c)(l), 503(b), 506(c), 507(b), 546(c) or otherwise, shall be senior to, equal to, or *pari passu* with, the Super-Priority Claim granted to the Lender for the New Obligations.  Notwithstanding the administrative expense and Super-Priority Claims of the Lender, the Lender shall not contest the payment of or seek disgorgement of any administrative expense claim of the Debtors paid pursuant to the Approved Budget, provided such payments were made prior to any Event of Default or Termination Date.

    5.    As security for the New Obligations, and as provided in the New Loan Documents, and pursuant to Sections 364(c)(1) and (2) of the Bankruptcy Code, the Lender shall have and is hereby granted (effective upon the date of this Final Order and continuing without the necessity of the execution, filing and/or recordation of mortgages, security agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements or otherwise), valid, perfected, and enforceable security interests and liens (collectively, the "Lender's Lien") upon all present and after-acquired personal property, fixtures, real property and interests in the foregoing property of the Debtors of any nature whatsoever, wherever located, including, without limitation, all patents, trademarks, copyrights, royalty payments, license fees, accounts, deposit accounts, inventory, general intangibles, equipment, goods, fixtures, chattel paper, books, records, investment property, money, cash and cash equivalents, and any other item of Collateral (as defined in the New Loan Agreement)

(collectively, with all proceeds and products of the foregoing, the "Collateral"), provided, however, that the Collateral does not include any of the Debtors' claims and causes of action arising under Bankruptcy Code §§ 544, 545, 547, 548, 549, and 550, or proceeds therefrom.

6.     Subject to the Existing Liens (as defined below), the Lender's Lien in the Collateral held by or granted to the Lender as security for the New Obligations shall be a first priority, senior, perfected lien securing the full amount of the New Obligations.  The Lenders' Lien in the Collateral shall prime the pre-petition liens and security interests securing the Pre-Petition Indebtedness under the Pre-Petition Loan Documents, but shall not prime valid, enforceable and unavoidable security interests held by parties other than the Lender which were properly perfected prior to the Petition Date (such other pre-existing non-avoidable security interests in favor of parties other than the Lender, the "Existing Liens").  The security interests and liens granted to the Lender hereunder shall not be subject to any security interest or lien that is avoided and preserved for the benefit of any of the estates of any of the Debtors under § 551 of the Bankruptcy Code.

7.     As long as any portion of the New Obligations remains unpaid, or any New Loan Document remains in effect, unless the Debtors have obtained the Lender's prior written consent, the Debtors shall not request from the Bankruptcy Court (or any other court), an order which authorizes (under Bankruptcy Code §§ 105, 363, or 364, or otherwise): (i) the granting of any lien upon any of the Collateral in favor of any party other than the Lender, with priority senior or equal to the Lender's Lien; or (ii) the obtaining of credit or the incurring of indebtedness that is entitled to super-priority administrative status, in either case equal or superior to that granted to the Lender pursuant to this Final Order.

8.      As long as any portion of the New Obligations remains unpaid, or any New Loan Document remains in effect (without prejudice to other Events of Default as set forth in the New Loan Agreement) it shall constitute an Event of Default if (a) there shall be entered an order dismissing any of the Bankruptcy Cases, or an order with respect to any of the Bankruptcy Cases shall be entered by the Bankruptcy Court, or the Debtors shall file an application for an order, converting any of the Bankruptcy Cases to a case under Chapter 7 or appointing a Chapter 11 trustee in any of the Bankruptcy Cases, (b) there shall be entered in any of the Bankruptcy Cases or any subsequent Chapter 7 case any order which authorizes under any section of the Bankruptcy Code, including Bankruptcy Code §§ 105 or 364, (i) the granting of any lien upon any of the Collateral in favor of any party other than the Lender, with priority senior or equal to the Lender's Lien; or (ii) the obtaining of credit or the incurring of indebtedness that is entitled to super-priority administrative status, in either case equal or superior to that granted to the Lender pursuant to this Final Order; or (c) the Debtors' use cash collateral other than as provided for in this Final Order.  The Lender shall be entitled to credit bid the Pre-Petition Indebtedness and the New Obligations in connection with any sale of Collateral and/or Pre-Petition Collateral under Bankruptcy Code §§ 363(b) and/or (f).

9.      The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements, in addition to the New Loan Documents and that the Lender reasonably may require as evidence of and for the protection of the New Obligations, or that the Lender otherwise may deem reasonably necessary to effectuate this Final Order and the New Loan Documents.  The Debtors and the Lender are hereby authorized to implement, in accordance with the terms of the New Loan Agreement and without further order of this Court, any written modifications of the New Loan Agreement or any other

New Loan Documents that do not materially change the economic terms of the Post-Petition Financing approved by this Court.

10.      The Lender's Lien on the Collateral pursuant to this Final Order and the New Loan Documents is adjudicated to be valid, perfected, and enforceable against all of the Debtors and their estates and all other creditors and parties-in-interest of any kind, without regard to applicable federal, state, or local filing or recording statutes or other provisions of applicable law.  The Lender may, but need not, take such steps as they deem appropriate to comply with such statutes or other applicable law.   This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Lender's Lien, without the necessity of (i) filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or (ii) the taking of any other action to validate or perfect the Lender's Lien.

11.      Without limitation of the conditions to extending credit set forth in the New Loan Agreement or elsewhere in this Final Order, each of the Debtors shall authorize, execute, acknowledge, deliver, file, register and record such security agreements, notices, financing statements, deposit account control agreements, memoranda of intellectual property security interests and other instruments as the Lender may reasonably request in order to evidence or to perfect the Lender's Lien and shall pay all filing or recording fees or taxes required to be paid in connection therewith, including any recording, mortgage, documentary, transfer or intangible taxes.

12.      This Final Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Collateral.

13.    The automatic stay pursuant to Bankruptcy Code § 362 is hereby modified to the extent necessary to permit the Lender to perform in accordance with and exercise its respective rights and remedies pursuant to this Final Order and the New Loan Documents.

14.    Upon the occurrence of an Event of Default, and for so long as such Event of Default continues without cure, and without application or motion to, or further order from, this Court or any other court, the Lender is hereby authorized, *inter alia,* to (a) terminate the New Loan Agreement (including, but not limited to, all duties and obligations of the Lender); (b) declare the principal and accrued interest, fees, and other liabilities comprising the New Obligations to be immediately due and payable; and (c) charge a default rate of interest as set forth in the New Loan Documents.

15.    Upon the occurrence of any Event of Default or upon the Termination Date, in addition to the remedies provided in paragraph 14 above, the Lender shall be entitled (i) to file an affidavit with the Bankruptcy Court certifying the occurrence of an Event of Default or the occurrence of the Termination Date and simultaneously serving the same on Debtors and their counsel of record via facsimile or email and, if the Debtors fail to file a response with the Bankruptcy Court, which response must be limited to whether or not an Event of Default or the Termination Date has occurred, within forty-eight (48) hours of filing such affidavit, the Bankruptcy Court shall enter an order granting the Lender relief from the automatic stay and

permitting the Lender to enforce its rights and remedies under the New Loan Documents, the Final Order and other applicable law available to the Lender.

16.     The New Loan Agreement and each of the New Loan Documents shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors in accordance with their terms.

17.     The Lender is extending credit and making DIP Loans to the Debtors in good faith.  Accordingly, the Lender is entitled to the full protection of Bankruptcy Code § 364(e) with respect to the New Obligations and the Lender's Lien authorized, created, and adjudicated by this Final Order, if this Final Order or any finding, authorization, or adjudication contained herein is vacated, reversed, or modified on appeal.  Any modification, reversal, or vacation of this Final Order (by this or any other court) shall not affect the validity and enforceability of the New Obligations of the Debtors to the Lender incurred pursuant to this Final Order, or the validity, priority, and enforceability of the Super-Priority Claim and the Lender's Lien under this Final Order.  Notwithstanding any modification, reversal, or vacation of this Final Order, all loans and advances made by the Lender pursuant hereto under the New Loan Agreement and all New Obligations incurred by the Debtors pursuant hereto prior to the effective date of any stay, modification, reversal, or vacation of this Final Order shall be governed in all respects by the original provisions of this Final Order; and the Lender shall be entitled to all of the rights and benefits granted herein with respect to the New Obligations, the Super-Priority Claim and the Lender's Lien on Collateral securing the New Obligations.

18.     The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Bankruptcy Cases (and, to the extent not satisfied in full, the New Obligations shall not be

discharged by the entry of any such order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtors having hereby waived such discharge); (b) converting any of the Bankruptcy Cases to a Chapter 7 case; (c) appointment of a Trustee or other estate representative in any of the Bankruptcy Cases; or (d) dismissing any of the Bankruptcy Cases.  The terms and provisions of this Final Order and the Lender's Lien and the Super-Priority Claim granted pursuant to this Final Order and the New Loan Documents shall continue in full force and effect notwithstanding the entry of such order described in (a) through (d) above of this paragraph; and the Lender's Lien and the Super-Priority Claim shall maintain their priority as provided by this Final Order until all of the New Obligations are paid to the Lender indefeasibly and in full.

19.    Without limiting any provisions of the New Loan Agreement, the payment and performance of the New Obligations are due and payable in full to the Lender upon the earliest to occur of: (a) the Termination Date (as defined in the New Loan Agreement, or such extended Maturity Date to which the Lender and the Debtors agree in writing); or (b) acceleration after the occurrence and during the continuation of an Event of Default.

20.    Without limiting the provisions and protections set forth in this Final Order, if at any time prior to the repayment in full of all New Obligations, including subsequent to the confirmation of any Plan of Reorganization respecting the Debtors, the Debtors or any Trustee subsequently appointed shall obtain credit or incur debt pursuant to Bankruptcy Code §§ 364(b), 364(c) or 364(d) then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Lender in reduction of the New Obligations.

21.    The Debtors have acknowledged and agreed that (i) Epic is truly and justly indebted to the Lender, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $15,000,000.00 as of March 18, 2011, (plus interest accrued

and unpaid thereof), under the Debenture Agreement and Debenture Notes; and (ii) Epic's obligations to the Lender pursuant to the Pre-Petition Loan Documents are secured by valid, perfected, first priority, enforceable and unavoidable liens and security interests in the Pre-Petition Collateral.

22.     This Final Order is without prejudice to the rights of an Unsecured Creditors Committee, if one is appointed in these Bankruptcy Cases, and parties in interest other than the Debtors to object to or challenge within sixty (60) days from the Petition Date (i) the validity, extent or priority of the lien and security interests of the Lender in and to any Pre-Petition Collateral, (ii) the validity, allowability or status of the Pre-Petition Indebtedness, or (iii) any other matter related to the Pre-Petition Loan Documents.  Unless such an objection or challenge is made within such sixty (60) day period, all such objections and challenges shall be deemed to have been waived.

23.     All cash of the Debtors now in existence or hereafter acquired constitutes the cash collateral of the Lender within the meaning of Bankruptcy Code Section 363(a).  Provided that there has been no Event of Default or Termination Date, the Lender has consented to the Debtors' use of cash collateral in accordance with the New Loan Documents and the Approved Budget.  Debtors shall not use Lender's cash collateral except in accordance with the New Loan Documents and the Approved Budget.

24.     As adequate protection for the use by the Debtors of any Pre-Petition Collateral, including any cash collateral, and for the priming liens and security interests granted hereunder to secure the Post-Petition Financing, the Lender is hereby granted valid, binding, enforceable and perfected security interests in and liens on the Collateral up to the amount of any diminution in the value of the interests of the Lender in the Pre-Petition Collateral and Lender's cash

collateral, subject and subordinate only to (i) the security interests and liens granted to the Lender under the New Loan Documents, and (ii) the Existing Liens.

25.     None of the Post-Petition Financing or proceeds therefrom and none of the cash collateral subject to liens or security interests in favor of the Lender may be used to fund, directly or indirectly, any effort to: (i) object to or contest in any manner, or raise any defenses to the validity, perfection, priority, or enforceability of the Pre-Petition Indebtedness and/or New Obligations, the Lender's Lien securing such New Obligations or the Lender's liens or security interest in the Pre-Petition Collateral, or (ii) assert any claims or causes of action against the Lender of any type, including, without limitation, any avoidance actions under Chapter 5 of the Bankruptcy Code, or any claim or cause of action against the Lender.

26.     Except as otherwise provided in this Final Order, without the prior consent of the Lender (which consent may be provided or withheld in the Lender's sole discretion), pursuant to Bankruptcy Code § 552(a), all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged to the Lender pursuant to the New Loan Documents and this Final Order, is not and shall not be subject to a lien of anyone else resulting from any security agreement entered into by the Debtors prior to the Petition Date or otherwise.

27.     The Lender shall be deemed to be a party-in-interest for all purposes in the Bankruptcy Cases with the right and opportunity to appear and be heard on all matters arising in the Bankruptcy Cases, including, without limitation: (i) employment and payment of professionals by the Debtors' estates, (ii) the sale of any estate property, (iii) any plan of reorganization proposed in the Bankruptcy Cases, and (iv) any proposed conversion or dismissal of any of the Bankruptcy Cases.  Nothing contained herein shall limit the rights of the Lender to (i) seek further relief, (ii) seek additional adequate protection from the Debtors, (iii) request a

conversion of any or all of the Debtors' Bankruptcy Cases to chapter 7 or the appointment of a trustee or an examiner under § 1104 of the Bankruptcy Code, or (iv) propose, subject to the provisions of § 1121 of the Bankruptcy Code, a chapter 11 plan or plans in any or all of the Bankruptcy Cases.

28.     The provisions of this Final Order shall be binding upon and inure to the benefit of the Lender, the Debtors, and their respective successors and assigns, including any Trustee or other fiduciary hereafter appointed in the Bankruptcy Cases as a legal representative of the Debtors or their estates.  Without limiting the foregoing, this Final Order shall bind any trustee or other fiduciary (including, without limitation, any examiner or responsible person) hereafter appointed for the estate of any of Debtors, whether in the Bankruptcy Cases or in the event of the conversion of any of the Bankruptcy Cases to a liquidation under Chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Final Order.

29.     Service of the Motion as described therein and Notice of the Final Hearing is deemed adequate and appropriate under the circumstances and in full compliance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of the District of Colorado.

30.     The notice of the Final Hearing given in accordance with the notice provisions approved by this Court in the Interim Order constitutes sufficient notice of the Final Hearing, and such notice shall be and hereby is adjudicated sufficient to provide due process to, and to bind, any other party to whom such notice was given asserting any Lien or other adverse interest of any kind (including any setoff, other charge, recoupment, or other adverse claim) in any of the Collateral.

31.     The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

32.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), this Final Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.

Dated: May ___, 2011.

IT IS SO ORDERED:

_____

Hon. Michael E. Romero
UNITED STATES BANKRUPTCY JUDGE