

Signed/Docketed
August 8, 2012

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-15521 MER |
| EPIC ENERGY RESOURCES, INC. ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| _____ ) | |
| In re: ) | Case No. 11-15523 MER |
| ) | |
| EPIC INTEGRATED SERVICES, INC. ) | Chapter 11 |
| ) | |
| Debtor. ) | **Jointly Administered Under** |
| ) | **Case No. 11-15521 MER** |

## ORDER

This matter comes before the Court on the *Motion for Order Requiring Payment Pursuant to Joint Plan of Reorganization* (Docket No. 397) ("Motion for Payment Under Plan") filed by creditor Terrace Point Partnership ("TPP"), and the Debtors' objection thereto (Docket No. 410). TPP is the Debtors' former landlord with respect to a nonresidential real property lease ("Lease"). Based upon the operative June 7, 2011 rejection date of the Lease, TPP believes it is entitled to a priority administrative claim in the amount of $127,987.26 for damages resulting from the Lease rejection. The Debtors, on the other hand, contend their confirmed Joint Plan of Reorganization requires priority claimants to file a motion for approval of their administrative claim within 45 days from the effective date of the plan, which TPP failed to do. The Debtors further argue nothing in 11 U.S.C. § 365(d)(3)[1] automatically makes TPP's claim a priority administrative claim.

## PROCEDURAL HISTORY

The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on March 18, 2011 ("Petition Date"). On May 10, 2011, the Debtors filed a Motion to Reject Nonresidential Real Property Lease with TPP ("Motion to Reject Lease") (Docket No. 132), seeking an order rejecting the Lease as of the Petition Date. TPP did not file a

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

response, and on June 7, 2011, the Court entered its Order Granting Motion to Reject TPP Lease (Docket No. 158), granting the requested relief.

On June 16, 2011, TPP filed its Motion for Order Requiring Prompt Payment by the Debtors Pursuant to 11 U.S.C. § 365(d)(3) (Docket No. 171), seeking payment within twenty days of post-petition rent accruing prior to the date of rejection in the amount of $127,987.26 pursuant to 11 U.S.C. § 365(d)(3).[2] The Debtors filed an objection to this Motion on July 1, 2011 (Docket No. 181). Thereafter, TPP filed its Rule 60(b) Motion for Relief from June 7, 2011 Order ("Rule 60 Motion") (Docket No. 215), to which the Debtors filed a response (Docket No. 223). At the evidentiary hearing held October 26, 2011, the Court found "the June 7, 2011 Order was entered in error. The Court hereby modifies the June 7, 2011 Order to deem the rejection valid as of the date of the Order, that is, June 7, 2011, not the date of the petition."[3] The Debtors subsequently filed an appeal of this Court's Orders of October 26, 2011, and April 5, 2012, which appeal is currently pending.

The Debtors filed their Joint Plan of Reorganization Dated October 26, 2011 (Docket No. 252) (the "Plan") and Disclosure Statement (Docket No. 253) (the "Disclosure Statement"). On March 5, 2012, the Court entered an order confirming the Debtors' Plan (Docket No. 372). The Plan provides holders of Administrative Claims shall be paid in full on the effective date of the Plan.

## DISCUSSION

At the October 26, 2011 hearing, TPP's counsel, Mr. Murray Wilkening, testified. During his testimony, Mr. Wilkening stated several times he knew in order to secure an administrative expense payment, he would have to file an administrative claim or motion for administrative priority:

> Q (by Ms. Fujii) Okay. And after you received the motion and the notice isn't it true that you just decided that it wasn't important to object to the motion?
>
> A (by Mr. Wilkening) I decided that it was not necessary, because I could raise the Debtors' claim for the two months, or the rent up to the rejection (indiscernible) by a separate filing.
>
> Q (by Ms. Fujii) So you believe that it was not necessary to object to the motion to reject the office lease because you could subsequently file a motion to 365(d)(3); is that correct?

---

[2] On July 9, 2011, the Court issued an Order for Compliance (Docket no. 178) which directed TPP to send the Motion for Payment out on notice. TPP did so on July 27, 2011, setting an objection date of August 3, 2011.

[3] *See* Minutes of Proceedings, Docket No. 250.

> A (by Mr. Wilkening) Correct. That the lease would be rejected. And there was no -- essentially no argument there, or no viable argument. But rather --
>
> Q (by Ms. Fujii) Okay.
>
> A (by Mr. Wilkening) -- that the claim for the post petition rent was a separate claim that I could raise, or I could raise on behalf of Terrace Point.[4]

Later, Mr. Wilkening noted he received the Motion to Reject Lease and related notice on May 4, 2011, and the notice of the bar date for filing claims the next day, on May 5, 2011.[5] In addition, Mr. Wilkening stated as follows with respect to TPP's failure to file an objection to the Debtors' Motion to Reject Lease:

> Q (by Ms. Fujii) Your reasons as you just testified earlier and as you put in your affidavit, was that you misunderstood the effect of not objecting to the motion to reject; is that correct?
>
> A (By Mr. Wilkening) I didn't -- I don't think I misunderstood the effect. I understood that no law sets a date, or no law or rule to my knowledge sets a time, or date to file that motion requesting payment of post petition rent. And that there -- another date had been established in the case by which that ought to happen.[6]

Moreover, as part of Mr. Wilkening's closing argument, he stated: "And I see the notice of the bar date and the notice includes some language about administrative claims, I thought I had up through that date to assert that claim, affirmatively assert that claim on behalf of the landlord Terrace Point."[7] Lastly, as part of its ruling on the record, the Court stated: "And this Court will modify that order appropriately to correct that error and give the parties the opportunity to litigate in a proper forum and in a proper manner on the merits of whether any post-petition rent is appropriate."[8]

Although the Court's ruling with respect to the date of the rejection is currently on appeal, Mr. Wilkening's testimony, argument, and presence for the Court's ruling shows he knew (at least by October 26, 2011, and certainly thereafter), he had to take affirmative action to litigate the landlord's claim for post-petition rent. In addition, as

---

[4] Transcript of Hearing held October 26, 2011, p. 9, lines 9–24.

[5] *Id.* at p. 12 line 23 through p. 14, line 25.

[6] *Id.* at p. 17 lines 2–9.

[7] *Id.* at p. 27 lines 13–16.

[8] *Id.* at p. 47 line 23 through p. 48 line 1.

discussed above, he knew the provisions of the Disclosure Statement and Plan, and in fact had contributed language to those documents. He therefore knew the Plan, which upon confirmation would govern the relationship between the parties, required TPP to file a motion asserting a claim with administrative priority.

Section 365(d)(3) creates the potential for post-petition rent, such as is asserted by TPP, to be considered as an administrative claim. It further creates the responsibility for a trustee or debtor-in-possession to pay such a claim as part of an ongoing bankruptcy case. Unfortunately, this statutory provision imposes a responsibility without an accompanying remedy. It offers no relief to a lessor who does not obtain payment while a trustee or debtor-in-possession is still the fiduciary in the case. When a plan is confirmed, the plan serves as a new contract among the reorganized debtors and their creditors.[9] Thus, it is the plan, not § 365, that controls what happens to a lessor's unpaid claim.[10]

In the within case, after confirmation of the Plan, rather than file an administrative claim as required by the Plan, TPP only filed the Motion for Payment Under Plan, which is virtually identical to its earlier Motion for Order Requiring Prompt Payment which assumed it already had achieved administrative claim status for its post-petition rent claim.

Alternatively, TPP suggests its Rule 60 Motion should serve as a proper assertion of an administrative claim; however, the Rule 60 Motion sought only reconsideration of the Court's ruling on the date the lease would be deemed rejected. It did not seek payment of any post-petition amounts due under the Lease, nor a determination of whether TPP's claim was entitled to administrative priority.[11]

---

[9] 11 U.S.C § 1141(a). *Connolly v. City of Houston, Texas (In re Western Integrated Networks, LLC)*, 329 B.R. 334, 341 (Bankr. D. Colo. 2005) (citing *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004)); *Lacy v. F.D.I.C. (In re Lacy)*, 183 B.R. 890, 892 n.1 (Bankr. D. Colo. 1995).

[10] *Jaurdon v. Cricket Communications, Inc. (In re Cricket Communications, Inc.),* 412 F.3d 1156, 1158 (10th Cir. 2005) (Claimants against a debtor were bound by the terms of a confirmed plan provided they received notice and an opportunity to object to the plan's confirmation); *see also In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056-57 (11th Cir. 2011) (In the absence of "the most compelling circumstances," a creditor will not be allowed to amended its claim after confirmation of a plan–a confirmed plan should be given *res judicata* effect.); *In re UAL Corp.*, 635 F.3d 312, 321 (7th Cir. 2011) (A claims trader had to file an objection before the confirmation of a plan, or lose its opportunity to challenge the plan's provision regarding the assumption or rejection of executory contracts.).

[11] The rejection of the Lease, whatever the date, created an unsecured claim. As the United State Court of Appeals for the Tenth Circuit has noted, administrative expense status may only be granted where a bankruptcy estate has benefitted from the use of a creditor's property. Mere potential benefit to the estate or mere possession of the property by a debtor does not meet this requirement. *In re Mid Region Petroleum, Inc.,* 1 F.3d 1130, 1133 (10th Cir. 1993) (affirming the denial of administrative priority for

In this case, TPP was aware of the contents of both the Disclosure Statement and the Plan prior to confirmation. In fact, TPP admits having contributed language to the Disclosure Statement prior to its approval. TPP was aware the proposed Plan made a distinction between "administrative claims" and "*allowed* administrative claims," and that the plan proposed to pay only **allowed** administrative claims following an application for such a claim within 45 days of the Plan's effective date. TPP did not file its Motion for Payment Under the Plan, or any assertion of administrative priority, prior to confirmation. After confirmation, TPP had the opportunity to file an administrative claim for 45 days after the confirmed Plan's effective date, but failed to do so.

Put differently, § 365(d)(3) created grounds for TPP to seek allowance of an administrative claim, but did not provide authority for an automatic administrative claim. Pursuant to the confirmed Plan, in order for an administrative claimant to be paid, the claimant must have taken affirmative action. Here, TPP failed take any action to protect its claim to an administrative expense prior to the confirmation of the Plan and thereafter, within the deadline set forth in the Plan.

Finally, § 503, governing administrative claims and administrative expenses, indicates:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title. . . .[12]

In this case, TPP has shown no reason why it should be allowed to file a § 503 claim after the deadline set in the confirmed plan.

For these reasons, the Court finds TPP's failure to seek to enforce its right to payment under § 365(d)(3) or the Plan constitutes a waiver of any administrative claim and a waiver of the right to seek an administrative claim now that the Plan deadline has expired. Accordingly, TPP becomes an unsecured claimant with the right to receive payments with other general unsecured claimants.

---

postpetition equipment rental charges under a prepetition lease, which lease was not rejected immediately upon the case filing); *see also In re Vista Ridge Development, LLC*, 463 B.R. 143, at *4 (10th Cir. B.A.P. December 20, 2010) (unpublished decision); *In re Native American Systems*, 351 B.R. 135, 141 (10th Cir. B.A.P. 2006).

[12] Section 502(f) deals with administrative "gap" claims in involuntary bankruptcy cases.

      IT IS THEREFORE ORDERED TPP's *Motion for Order Requiring Payment Pursuant to Joint Plan of Reorganization* is DENIED.

Dated August 8, 2012                        BY THE COURT:

                                                  Michael E. Romero
                                                  United States Bankruptcy Judge